IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CITY OF ALBUQUERQUE,**

        **Plaintiff,**

v.                              CIV-06-0649 LAM/WDS

**QWEST CORPORATION,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT FOR BREACH OF CONTRACT AND DEBT AND MONEY DUE (*Doc. 4*), DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT AND DEBT AND MONEY DUE (*Doc. 2*), WITHOUT PREJUDICE, AND GRANTING PLAINTIFF TEN (10) DAYS TO FILE A MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

**THIS MATTER** is before the Court on the *Motion to Dismiss Amended Complaint for Breach of Contract and Debt and Money Due* (*Doc. 4*), filed by Defendant Qwest Corporation (hereinafter, "Defendant" or "Qwest") on September 5, 2006. The Court has considered the motion, Defendant's brief in support of the motion (*Doc. 5*), Plaintiff's response in opposition to the motion (*Doc. 6*), Defendant's reply brief in support of the motion and request for oral argument (*Doc. 13*) and relevant law, and **FINDS,** for the reasons set forth below, that the motion is well-taken and should be **GRANTED**, and that Plaintiff's *First Amended Complaint for Breach of Contract and Debt and Money Due* (*Doc. 2*) should be dismissed without prejudice. Additionally, the Court **FINDS** that Plaintiff should be **GRANTED** a period of ten (10) days after entry of this memorandum opinion and order in which to file a motion for leave to file a second amended complaint asserting allegations of equitable tolling or face dismissal of this case with prejudice.

*Request for Oral Argument*

As an initial matter, the Court considers the request for oral argument contained in Defendant's reply brief.[1] The Court's local rule D.N.M.LR-Civ. 7.8(a) states that "[a] motion will be decided on the briefs unless the Court sets oral argument." Here, the Court finds that Defendant's motion to dismiss can be decided on the briefs and no oral argument is necessary. Therefore, Defendant's request for oral argument will be **DENIED**.

*Background*

This case arises out of a franchise ordinance enacted by Plaintiff City of Albuquerque (hereinafter, "City" or "Plaintiff") granting U.S. West Communications, Inc. (hereinafter, "USWCI") the right to provide telecommunications services in the City. In its first amended complaint, the City alleges that USWCI merged with Qwest in 2000, and that Qwest assumed the franchise ordinance.[2] On June 13, 2006, the City filed suit against Qwest in state district court in Bernalillo County, New Mexico, alleging that Qwest had breached the franchise ordinance and owed the City money for underpaid fees due under the franchise ordinance.[3] On July 20, 2006, Qwest removed the case to this Court,[4] and the City filed its first amended complaint in this proceeding on August 17, 2006.[5] The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, based on diversity of citizenship between the City (a municipality formed and organized under the Constitution and laws

---

[1] *See* **Reply Brief in Support of Motion to Dismiss Amended Complaint and Request for Oral Argument** (*Doc. 13*) at 11.

[2] *See* **First Amended Complaint for Breach of Contract and Debt and Money Due** (*Doc. 2*) at ¶ 5.

[3] *See* **Notice of Removal** (*Doc. 1*), Exhibit A at fourth to seventh pages.

[4] *See* **Notice of Removal** (*Doc. 1*).

[5] *See* **First Amended Complaint for Breach of Contract and Debt and Money Due** (*Doc. 2*).

of New Mexico) and Qwest (a Colorado corporation) and the amount in controversy, and jurisdiction is not in dispute.

Qwest's motion to dismiss seeks the dismissal of the City's first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Qwest contends that the City is asserting claims for breach of contract and these claims are barred by New Mexico's six-year statute of limitations for actions founded on written contracts set forth in N.M. Stat. Ann. § 37-1-3(A) (1978). In response, the City argues that Qwest's motion should be denied because Qwest's inequitable conduct tolled the commencement of the statute of limitations until September 18, 2000, making the City's lawsuit against Qwest timely.

### *Legal Standards*

The standards for a Rule 12(b)(6) motion are well-established. A motion under Rule 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts entitling the plaintiff to relief under the plaintiff's theory of recovery. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002), citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations in the complaint as true, draws all reasonable inferences from those facts in favor of the plaintiff and liberally construes the pleadings. *Id.* The issue in reviewing the sufficiency of a complaint under Rule 12(b)(6) is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Id.*, citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

A complaint is subject to dismissal under Rule 12(b)(6) if the allegations in the complaint "indicate the existence of an affirmative defense that will bar the award of any remedy; but for this

3

to occur, the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2007). A complaint showing that the applicable statute of limitations has run on the plaintiff's claims for relief can be dismissed under Rule 12(b)(6). *Id.*; *see also Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.") (citations omitted).

### *Factual Allegations in Plaintiff's First Amended Complaint*

In its first amended complaint, the City alleges that it entered into a franchise agreement in November of 1997, granting USWCI the right to provide local exchange telecommunications services in the City.[6] The referenced "franchise agreement" is actually a City franchise ordinance and the City attaches a copy of the franchise ordinance to its first amended complaint as Exhibit A.[7] Because the "franchise agreement" is, legally, a municipal ordinance, the Court refers to it as the "franchise ordinance" in this memorandum opinion and order. The City alleges that the franchise ordinance incorporated the terms of a master telecommunications ordinance enacted by the City, a copy of which is attached to the first amended complaint as Exhibit B.[8] The copy of the franchise ordinance attached to the first amended complaint shows that this ordinance was adopted by the Albuquerque City Council on October 20, 1997, and approved by the Mayor of Albuquerque on

---

[6]*See* **First Amended Complaint for Breach of Contract and Debt and Money Due** (*Doc. 2*) at ¶ 4.

[7]*Id.*, Exhibit A.

[8]*See* **First Amended Complaint for Breach of Contract and Debt and Money Due** (*Doc. 2*) at ¶ 4.

4

November 10, 1997.[9] It also shows that the duration of the authority granted in the franchise ordinance was three years, beginning on the "Effective Date" as that term is defined in the ordinance.[10]

The City alleges that the franchise ordinance provided for the payment of a fee to the City by Qwest equal to three percent of its gross revenues on telecommunications services and that the ordinance specified the services that were subject to the fee.[11] The City alleges that it had the right, pursuant to the master telecommunications ordinance, to review or audit Qwest's books and records to identify and account for gross revenues for the determination of the fees owed and that it had such an audit conducted by DMG Maximus, Inc. (hereinafter, "DMG Maximus").[12] The City alleges that DMG Maximus submitted an audit report to the City on September 18, 2000, a copy of which is attached to the first amended complaint as Exhibit C (hereinafter, "Audit Report").[13] The City alleges that the Audit Report concluded that Qwest had underpaid the City for "number portability revenue" in the amount of $126,540.00, and had underpaid the City for "call return activation revenues" in the amount of $73,573.00.[14] The City alleges that it made demand on Qwest on March 22, 2006, and attaches a copy of its demand letter as Exhibit D.[15] The City alleges that, after an exchange of correspondence, it notified Qwest, by a letter dated December 20, 2004, a copy of which is attached

---

[9] *Id.*, Exhibit A at 10.

[10] Id., Exhibit A at 2. The exact date of the "Effective Date" is not clear from the parties' submissions.

[11] *Id.* at ¶ 6.

[12] *Id.* at ¶¶ 8-9.

[13] *Id.* at ¶ 9.

[14] *Id.* at ¶¶ 10-11.

[15] *Id.* at ¶ 12.

5

to the first amended complaint as Exhibit E, that it was invoking the mediation requirements of the master telecommunications ordinance, which provisions were incorporated by reference into the parties' franchise ordinance.[16] The City alleges that Qwest informed the City's alternative dispute resolution coordinator, by an undated letter date-stamped by the City's legal department on February 28, 2005, a copy of which is attached to the first amended complaint as Exhibit F, that there was no longer any basis for mediating the dispute under the franchise ordinance because the ordinance had expired.[17] The City alleges that Qwest has failed and refused to pay the amounts it allegedly owes to the City under the franchise ordinance.[18]

*Analysis*

The City asserts claims against Qwest for breach of contract and debt and money due.[19] As relief, the City seeks an award of actual and compensatory damages, attorney's fees and costs, and such other relief as the Court deems just and proper.[20] Although the City asserts its claims in two separate counts for breach of contract and debt and money due, both claims are based on the City's written franchise ordinance which the parties appear to agree was a written contract.[21] In their

---

[16]*Id.* at ¶¶ 13-14.

[17]*Id.* at ¶ 15.

[18]*Id.* at ¶ 16.

[19]*Id.* at 3-4.

[20]*Id.* at 4.

[21]In the brief in support of its motion to dismiss, Qwest characterizes the City's franchise ordinance as a contract and cites *Mountain States Tel. & Tel. Co. v. Town of Belen*, 244 P.2d 1112, 1121 (N.M. 1952) as authority for the proposition that telecommunications franchise ordinances are written contracts under New Mexico law. *See* **Brief in Support of Motion to Dismiss Amended Complaint for Breach of Contract and Debt and Money Due** (*Doc. 5*) at 4. The City, in its response to the motion to dismiss, does not dispute this characterization of the franchise ordinance as a contract. *See* **The City of Albuquerque's Response in Opposition to Motion to Dismiss** (*Doc. 6*).

submissions, the parties also appear to agree that the statute of limitations applicable to both of the City's claims is New Mexico's six-year statute of limitations for actions founded on written contracts and that New Mexico's tolling rules apply to the City's claims.[22] The Court agrees with the parties that New Mexico's six-year statute of limitations for actions on written contracts and New Mexico's tolling rules apply to the City's claims in this case since the relevant state statute of limitations applies in diversity cases, as do the applicable state tolling rules.[23] Accordingly, the Court concludes that New Mexico's six-year statute of limitations for actions founded on written contract applies to both of the City's claims and that New Mexico's tolling rules apply to the City's claims as well.

As an initial matter, the Court must decide whether to exclude from consideration two letters that are attached to the City's response to the motion to dismiss.[24] Neither letter is authenticated or submitted with an affidavit. Fed. R. Civ. P. 12(b)(6) provides that if matters outside the pleadings are presented to the Court on a motion under the rule "and not excluded by the court," then the motion should be treated as a motion for summary judgment and disposed of under Fed. R. Civ. P. 56

---

[22]New Mexico's six-year statute of limitations for actions on written contracts is set forth in N.M. Stat. Ann. Section 37-1-3(A) which applies to actions "founded upon any bond, promissory note, bill of exchange *or other contract in writing . . . .*" (emphasis added). In its motion to dismiss and supporting brief, Qwest asserts that this statute of limitations applies to the City's claims and the City does not dispute this assertion in its response. *See* ***Motion to Dismiss Amended Complaint for Breach of Contract and Debt and Money Due*** (*Doc. 4*) at 1-2; ***Brief in Support of Motion to Dismiss Amended Complaint for Breach of Contract and Debt and Money Due*** (*Doc. 5*) at 4-5; ***The City of Albuquerque's Response in Opposition to Motion to Dismiss*** (*Doc. 6*). In its response to Qwest's motion to dismiss, the City asserts that the statute of limitations was tolled by equitable estoppel, under New Mexico law, due to Qwest's inequitable conduct. *See* ***The City of Albuquerque's Response in Opposition to Motion to Dismiss*** (*Doc. 6*). In its reply, Qwest does not dispute that New Mexico's tolling rules apply to the City's claims. *See* ***Reply Brief in Support of Motion to Dismiss Amended Complaint and Request for Oral Argument*** (*Doc. 13*).

[23]*See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 108-10 (1945) (in diversity actions, federal courts should apply relevant state statute of limitations ); *see also Cook v. G.D. Searle & Co., Inc.*, 759 F.2d 800, 802-03 (10th Cir. 1985) (state tolling rules generally apply in diversity cases "absent a direct conflict between a state rule and an overriding federal rule or affirmative countervailing federal considerations.") (citations and footnotes omitted).

[24]These letters, which consist of correspondence between the City and USWCI, are attached as Exhibits 1 and 2 to ***The City of Albuquerque's Response in Opposition to Motion to Dismiss*** (*Doc. 6*).


after the parties are given a reasonable opportunity to present material pertinent to a motion for summary judgment. The Court has discretion in deciding whether to convert a motion to dismiss into one for summary judgment by accepting or rejecting materials beyond the pleadings that are submitted on a motion to dismiss.[25] The letters attached to the City's response to Qwest's motion to dismiss relate to the City's argument that Qwest's inequitable conduct tolled the statute of limitations applicable to the City's claims; however, these letters are not determinative of that issue. At this stage of the litigation, with no discovery having been conducted by the parties, the Court declines to consider the unauthenticated letters attached to the City's response to the motion to dismiss and declines to convert Qwest's motion to dismiss into a motion for summary judgment. Therefore, the Court will decide Qwest's motion under Rule 12(b)(6).

The City's claims against Qwest for the alleged underpayment of franchise fees are based on the Audit Report. In that report, DMG Maximus concluded that USWCI underpaid the City approximately $126,540.00 for number portability revenue for calendar years 1997-1998, and $73,570.00 for call return activation fees for calendar years 1997-1998.[26] The City's franchise ordinance and its master telecommunications ordinance provided that franchise fees were to be paid

---

[25] *See Lybrook v. Members of the Farmington Mun. Sch. Bd of Educ'n*, 232 F.3d 1334, 1341 (10th Cir. 2000) (rejecting argument that district court abused its discretion in failing to convert a Rule 12(b)(6) motion into one for summary judgment where the parties attached materials outside the pleadings to their motions).

[26] *See **First Amended Complaint for Breach of Contract and Debt and Money Due** (Doc. 2)*, Exhibit C at 8. The Court does not consider the copies of the Audit Report, the franchise ordinance and the master telecommunications ordinance to be "matters outside the pleading[s]" under Rule 12(b)(6) because their authenticity is not in dispute and they are referenced in, and attached to, the City's first amended complaint and incorporated therein by reference. *See **First Amended Complaint for Breach of Contract and Debt and Money Due** (Doc. 2)* at ¶¶ 4, 9. The Court has discretion to consider a document part of the pleadings if the document is referred to in a plaintiff's complaint and is central to a plaintiff's claims. *See, e.g., Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999), citing *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (documents are not "outside the pleading[s]" if they are "referred to in the plaintiff's complaint and are central to his claim").

to the City on a monthly basis, in arrears, based on USWCI's prior month's revenues.[27] In its motion to dismiss, Qwest argues that the six-year statute of limitations in N.M. Stat. Ann. § 37-1-3(A) (1978) began to run when the alleged underpayments were due to the City in 1997 and 1998, but no later than December of 1998.[28] Thus, Qwest argues that the City should have filed its lawsuit for the underpayment of franchise fees no later than December of 2004, making its claims untimely as a matter of law under the six-year statute of limitations.[29] The City, in its response to Qwest's motion to dismiss, argues that the statute of limitations should be tolled because Qwest prevented the City from learning the true facts about the underpayments and affirmatively concealed those facts until the Audit Report was completed on September 18, 2000.[30] The City argues that Qwest's inequitable conduct included its submission of inaccurate franchise fee payments to the City, its denial of any default under the franchise ordinance, its refusal to open its books to the City and its refusal to mediate the issue of the underpayments pursuant to the master telecommunications ordinance.[31] The City contends that Qwest's alleged inequitable conduct should toll the statute of limitations until September 18, 2000, the completion date of the Audit Report, when the limitations period should commence to run, making the City's claims timely under the six-year statute of limitations.[32]

---

[27]*See* **First Amended Complaint for Breach of Contract and Debt and Money Due** (*Doc. 2*), Exhibit A at 2 and Exhibit B at 7.

[28]*See* **Motion to Dismiss Amended Complaint for Breach of Contract and Debt and Money Due** (*Doc. 4*) at 1-2.

[29]*Id.* at 2.

[30]*See* **The City of Albuquerque's Response in Opposition to Motion to Dismiss** (*Doc. 6*) at 3-6.

[31]*Id.* at 2-5.

[32]Under the City's theory, it would have had until September of 2006, to file its lawsuit and, therefore, the Citiy's filing of this suit on June 13, 2006, is timely.

9

New Mexico law recognizes the doctrine of fraudulent concealment as a means of tolling a statute of limitations under principles of equitable estoppel. *See Garcia ex rel. Garcia v. La Farge*, 893 P.2d 428, 432 (N.M. 1995). Under this doctrine, a party seeking to toll a statute of limitations must show: (1) the use of fraudulent means by the other party; (2) successful concealment from the injured party; and (3) that the injured party did not know, or by the exercise of reasonable diligence could not have known, that he might have a cause of action. *See Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 74 (N.M. 1993) (citing *Keithley v. St. Joseph's Hospital*, 698 P.2d 435, 440 (Ct. App. 1984). The party asserting fraudulent concealment "must plead the circumstances giving rise to estoppel with particularity" and show "that he exercised due diligence and that some affirmative act of fraudulent concealment frustrated discovery notwithstanding such diligence." *Continental Potash, Inc.* at 74 (citations omitted).

In ruling on Qwest's motion, the Court considers as true the factual allegations in the City's first amended complaint. However, the Court finds no factual allegations in the first amended complaint to support the City's assertion of equitable tolling. Even when the first amended complaint is construed liberally, it does not allege that Qwest engaged in inequitable conduct related to the franchise fee payments or the audit which might toll the applicable statute of limitations. The City's allegations of equitable tolling only appear in its response to the motion to dismiss and the City has pled no facts in its first amended complaint supporting fraudulent concealment and tolling.

Because the City's claims are founded on the franchise ordinance and the ordinance was a written contract, the six-year statute of limitations in N.M. Stat. Ann. § 37-1-3(A) (1978) is applicable to the City's claims. Moreover, because the fees due under the franchise ordinance were

10

payable to the City in monthly installments, the six-year statute of limitations began to run, with respect to each installment, when the installment was due. *See Welty v. Western Bank of Las Cruces*, 740 P.2d 120, 122 (N.M. 1987) (when contract obligations were payable in installments, the six-year statute of limitations in N.M. Stat. Ann. § 37-1-3(A) began to run with respect to each installment when it was due). Consequently, the six-year statute of limitations on the various installments that are the subject of the City's claims could have commenced to run as early as February of 1997, if the first alleged underpayment was for USWCI revenues in the month of January, 1997, and as late as January of 1999, if the last alleged underpayment was for revenues in the month of December, 1998.[33] Based on these dates, the City's last claim for the underpayment of franchise fees would have been time-barred in January of 2005, absent tolling, and the City did not file suit on its claims until June of 2006. Therefore, the Court concludes that on the face of the City's first amended complaint, its claims are time-barred and its first amended complaint can be dismissed under Rule 12(b)(6).

The City has not filed a motion to amend its first amended complaint or otherwise requested leave to amend its first amended complaint. However, the City's response to Qwest's motion to dismiss suggests that it may be possible for the City to amend its first amended complaint to assert factual allegations which support equitable tolling. Decisions on the merits are generally favored under the Federal Rules of Civil Procedure and the purpose of allowing amendments to pleadings is to resolve litigation on the merits. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Therefore, notwithstanding the Court's decision to grant Qwest's motion, the Court will dismiss the City's first

---

[33]In its first amended complaint, the City does not specify the months for which franchise fees were allegedly underpaid or the effective date of the franchise ordinance; however, the City does seek damages for the alleged underpayment of revenues which are described in the Audit Report as having been underpaid "for calendar years 1997-1998." *See **First Amended Complaint for Breach of Contract and Debt and Money Due*** (*Doc. 2*), Exhibit C at 8.

11

amended complaint without prejudice and will give the City ten (10) days after entry of this memorandum opinion and order to file a motion under Fed. R. Civ. P. 15(a) for leave to file a second amended complaint asserting allegations of equitable tolling.[34] If the City does not file such a motion within that time period, the Court will dismiss this case with prejudice. In doing so, the Court expresses no opinion on the merits of the City's equitable tolling argument or its substantive claims for relief. If the City should file a second amended complaint alleging equitable tolling, Qwest may file any appropriate motion including a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and/or a motion for summary judgment under Fed. R. Civ. P. 56.

*Conclusion*

Qwest's request for oral argument on its motion to dismiss should be **DENIED**, its motion to dismiss should be **GRANTED**, and the City's first amended complaint should be **DISMISSED WITHOUT PREJUDICE**. The City should be given ten (10) days to file a motion under Fed. R. Civ. P. 15(a) for leave to file a second amended complaint asserting allegations of equitable tolling and, if the City fails to do so, this case should be **DISMISSED WITH PREJUDICE**.

**IT IS THEREFORE ORDERED** that Defendant's request for oral argument on its *Motion to Dismiss Amended Complaint for Breach of Contract and Debt and Money Due* (*Doc. 4*) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Dismiss Amended Complaint for Breach of Contract and Debt and Money Due* (*Doc. 4*) is **GRANTED**, and Plaintiff's

---

[34]The Court can dismiss Plaintiff's first amended complaint without prejudice, without dismissing this entire case. *See Moya v. Shollenbarger*, 465 F.3d 444, 451 (10th Cir. 2006).

*First Amended Complaint for Breach of Contract and Debt and Money Due* (*Doc. 2*) is **DISMISSED WITHOUT PREJUDICE**.

  **IT IS FURTHER ORDERED** that Plaintiff may file a motion under Fed. R. Civ. P. 15(a) for leave to file a second amended complaint asserting allegations of equitable tolling within ten (10) days after entry of this memorandum opinion and order; **provided that, if Plaintiff fails to do so, this case will be dismissed with prejudice**.

  **IT IS SO ORDERED.**

            *Lourdes A. Martínez*
            _____
            **LOURDES A. MARTÍNEZ**
            **United States Magistrate Judge**
            **Presiding by Consent**